CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 12 2012

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| RAY JUSTUS, | ) |
| Plaintiff, | ) Civil Action No. 1:11CV00039 |
| v. | ) **MEMORANDUM OPINION** |
| THE JUNCTION CENTER FOR INDEPENDENT LIVING, INC., | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendant. | ) |

In this employment discrimination action brought pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the plaintiff claims that the defendant, his former employer, failed to rehire him for an available position because he is blind. The case is presently before the court on the defendant's motion for summary judgment. For the reasons that follow, the motion will be granted.

### Factual Background

The following facts are presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

The Junction Center for Independent Living, Inc. ("The Junction Center") is a nonprofit organization based in Wise, Virginia, that provides services to people with disabilities, including counseling, community advocacy, and skills training. The organization's mission is to empower people with disabilities to live as independently as possible. It is funded in part by the federal government.

The plaintiff, Ray Justus, was employed by The Junction Center for approximately eight years. He first worked as a peer counselor and later served as the organization's community action specialist.

In November of 2007, the position of community action specialist was eliminated due to a loss of funding. On November 20, 2007, Dennis Horton, Executive Director of The Junction Center, emailed Justus and advised him that "[s]ince [The Junction Center] does not have the budget to continue your position, your status will be on layoff until such time as a suitable position that would be able to utilize your skills and talents would open up." (Mot. for Summ. J., Ex. 1 to Horton Dep.) Horton noted that "hopefully, something will soon open up that will fit your interests and skills." Id. According to the email, the effective date of the layoff was November 23, 2007.[1]

Approximately two months later, on January 16, 2008, Horton contacted Justus and advised him that The Junction Center planned to hire a new peer counselor. Horton encouraged Justus to apply for the position, emphasizing that The Junction Center would "welcome" his application. (Mot. for Summ. J., Ex. 2 to Horton Dep.) Justus applied for the position but was not rehired due to another loss of funding.

Nearly two years later, in November of 2009, The Junction Center decided to hire someone to fill the position of "Information Referral Specialist." (Mot. for Summ. J., Ex. A.) The position was a joint position between The Junction Center and a local community action

---

[1] Justus's termination from The Junction Center was the subject of an earlier employment discrimination action under the Rehabilitation Act. In that action, which was assigned to United States District Judge James P. Jones, Justus alleged that his employment was terminated because he is blind. On December 15, 2009, Judge Jones granted summary judgment in favor of The Junction Center, finding that Justus failed to establish a prima facie case of discrimination. See Justus v. Junction Ctr. for Indep. Living, Inc., 673 F. Supp.2d 462, 466 (W.D. Va. 2009).

agency, for which the successful applicant would work as an "Outreach/Intake Worker." Id. Justus was not personally informed about the joint position. However, as The Junction Center had done in the past when positions became available, the organization advertised for the position in The Coalfield Progress.[2]

The joint position was ultimately awarded to Janice Miller, who applied for and was interviewed for the position. Justus concedes that he did not apply for the position. He maintains, however, that he did not learn about the position until a year after it was advertised and filled.

Justus filed the instant action on May 18, 2011. In his amended complaint, Justus alleges that The Junction Center's "failure to notify and recall/hire [him] for the position of Information Referral Specialist was a direct and proximate result of his disability" and, thus, that the defendant "was in direct violation of the Rehabilitation Act of 1973." (Am. Compl. at ¶ 15.)

The case is presently before the court on The Junction Center's motion for summary judgment. The motion has been fully briefed and is ripe for review.[3]

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To forestall summary judgment, the non-moving party must do more than

---

[2] During his deposition, Justus testified that while he worked for The Junction Center, the organization advertised for positions in The Coalfield Progress when "a position came open or they were hiring." (Justus Dep. at 62.) Likewise, according to Dennis Horton, "[i]t is the practice of The Junction Center to advertise open positions at The Junction Center in The Coalfield Progress." (Mot. for Summ. J., Ex. A.)

[3] The parties elected to have the motion decided on the briefs, without oral argument.

3

present a "scintilla" of evidence in his favor. Anderson, 477 U.S. at 252. Instead, he must present sufficient evidence "such that a reasonable jury could return a verdict for the non-moving party." Id. at 248. In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movant. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

Section 504 of the Rehabilitation Act of 1973 makes it unlawful for a program receiving federal financial assistance to discriminate against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794. Employment discrimination claims under the Rehabilitation Act are evaluated under the burden-shifting framework adopted by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57 (4th Cir. 1995). Within this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. Id. If the plaintiff satisfies his initial burden, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action. Id. If the defendant provides evidence of a nondiscriminatory reason, the plaintiff, who bears the ultimate burden of persuasion, must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination. Id.

To establish a prima facie case of discriminatory failure to rehire, the plaintiff must show: (1) that he has a disability; (2) that he applied for and was otherwise qualified for the position in question; and (3) that he was rejected for the position solely on the basis of his disability. See Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995); Brown v. McLean,

159 F.3d 898, 902 (4th Cir. 1998); Perry v. Computer Sciences Corp., Case No. 1:10-CV-00175, 2010 U.S. Dist. LEXIS 99709, at *12 (E.D. Va. Sept. 21, 2010); Ihekwu v. City of Durham, 129 F. Supp. 2d 870, 879 (M.D.N.C. 2000).

In this case, The Junction Center concedes that Justus is disabled within the meaning of the Rehabilitation Act. Likewise, The Junction Center does not dispute that Justus was qualified to perform the position of Information Referral Specialist. Instead, The Junction Center argues that Justus cannot carry his burden of proving a prima facie case of discrimination, since it is undisputed that he did not apply for the position. For the reasons that follow, the court agrees with the defendant that Justus's failure to apply for the position precludes him from establishing a prima facie case of discrimination.

While neither party cited any discrimination cases involving similar facts, the court's own review of the case law revealed a number of decisions that the court finds persuasive. For instance, in Wanger v. G.A. Gray Co., 872 F.2d 142 (6th Cir. 1989), a case involving a claim of age discrimination, the United States Court of Appeals for the Sixth Circuit observed that "[a]n initial inquiry in any failure-to-rehire case is whether the employer is under an obligation to consider the plaintiff for the position." Id. at 146. This translates into a requirement that the plaintiff show "that he applied for the available position or . . . that the employer was otherwise obligated to consider him." Id. at 145.

In Wanger, the plaintiff argued that "it was not necessary for him to formally apply for the position." Id. At the time of his termination, the plaintiff had asked about the possibility of returning to work and was told that his "phone could ring" if business increased. Id. (internal quotation marks omitted). The Sixth Circuit rejected the plaintiff's argument that the plaintiff

did not need to apply for the position since the defendant knew that the plaintiff was interested in returning to work. The Court emphasized that the defendant "publicized the position, received numerous applications, and interviewed several people for the position," and that "the job opportunity advertisement published in the newspaper must be construed as constructive notice to Wanger of the job, necessitating that he apply before alleging discrimination." Id. at 146. The Court also noted that there was "nothing in the record to indicate that it was [the defendant's] employment practice to recall former employees or to inform them of future job openings. On the contrary, the job opportunity advertisement published in the newspaper is an indication that [the defendant] had no such policy." Id. The Court therefore found the plaintiff's failure to apply for the position "fatal" to his claim. Id. at 147. Citing its previous decision in Williams v. Hevi-Duty Elec. Co., 819 F.2d 620 (6th Cir. 1987), the Court emphasized that an employer is "not required to seek out all who could be said to have given a 'generalized expression of interest' in the past . . . and invite them to apply for work . . . ." Id. (quoting Williams, 819 F.2d at 630).

Both the Fourth Circuit and the Eleventh Circuit have agreed with the Sixth Circuit's decision in Wanger and held that "a general interest in being rehired [or promoted] without submitting an application is not enough to establish a prima facie case of . . . discrimination when the defendant-employer has publicized an open position." Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003). As the Fourth Circuit explained in Williams v. Giant Food, Inc., 370 F.3d 423 (4th Cir. 2004):

> If an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory

> failure to promote. In such a circumstance, the employee's general requests for advancement are insufficient to support a claim for failure to promote.
>
> On the other hand, if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position . . . . As the Second Circuit observed in [Mauro v. S. New England Telecomms., Inc., 208 F.3d 384, 387 (2d Cir. 2000)], "requiring the plaintiff to show that he or she applied for the specific jobs at issue would be unrealistic" where the employer did not post the vacancy, "as an employee by definition cannot apply for a job that he or she does not know exists."

Id. at 431 (additional internal citations omitted); see also White v. Hurley Med. Ctr., Case No. 09-CV-14344, 2010 U.S. Dist. LEXIS 109468, at *22-23 (E.D. Mich. Oct. 14, 2010) (granting summary judgment in favor of the defendant on the plaintiff's failure-to-rehire claim, where the plaintiff never applied for a position posted on the defendant's website, and failed to show that the defendant had an obligation to inform the plaintiff of the opening); Steiner v. Envirosource, Inc., 134 F. Supp. 2d 910, 922 (N.D. Ohio 2001) (holding that the plaintiff could not establish a prima facie case of failure to rehire or recall based on age, since the plaintiff failed to apply for the open position).

Having reviewed the evidence in this case, the court concludes that Justus's failure to apply for the position of Information Referral Specialist is fatal to his claim of discrimination. The joint position did not become available until November of 2009, nearly two years after Justus was laid off from The Junction Center. It is undisputed that The Junction Center advertised for the joint position in The Coalfield Progress and that Justus did not apply for the position. Although Justus was aware that The Junction Center utilized The Coalfield Progress to advertise for open positions, Justus did not monitor the newspaper after he was laid off from the

organization or ask anyone else to do that for him. Likewise, there is no evidence that Justus contacted The Junction Center during the relevant time period to ascertain whether the organization had any openings.

Notwithstanding the fact that Justus did not apply for the position of Information Referral Specialist, Justus argues that The Junction Center was nonetheless obligated to contact him and consider him for the position. The only evidence Justus cites in support of such obligation, however, is the November 20, 2007 email from Dennis Horton, in which Horton advised Justus that The Junction Center did not have the money to continue funding Justus's position, and that he would be "on layoff [status] until such time as a suitable position that would be able to utilize your skills and talents would open up." (Mot. for Summ. J., Ex. 1 to Horton Dep.) The court agrees with the defendant that this email, which was sent two years before the position at issue became available, is insufficient to establish that The Junction Center was indefinitely obligated to advise Justus of any future job openings, or that the Junction Center was compelled to consider him for the position even though he did not apply.

Moreover, there is insufficient evidence in the record to demonstrate that it was The Junction Center's employment practice to rehire former employees without receiving applications or to personally inform them of future job openings. See Wanger, 872 F.2d at 146. The only evidence in this regard is the email that Justus, himself, received, two months after his position ended, when Horton encouraged him to apply for a peer counselor opening. In the absence of any other evidence, the court is unable to conclude that this single email is probative of an employment practice, or that it otherwise demonstrates that The Junction Center was obligated to consider Justus for the joint position that became available in November of 2009.

Indeed, the fact that Horton actively encouraged Justus to apply for the peer counselor position runs contrary to Justus's claim that The Junction Center failed to rehire him for the latter opening solely on the basis of his disability. For these reasons, the court concludes that Justus has failed to establish a prima facie case of discrimination.

Even if Justus could establish a prima facie case of discrimination, The Junction Center has articulated a legitimate, nondiscriminatory reason for not selecting Justus for the joint position of Information Referral Specialist, namely that Justus did not apply for the position. While Justus has enumerated a number of alleged slights during his previous tenure with The Junction Center,[4] the evidence cited by Justus does not create a genuine issue of material fact as to whether the defendant's legitimate, nondiscriminatory explanation for not rehiring Justus is merely a pretext for disability discrimination.

## Conclusion

For the reasons stated, the court will grant the motion for summary judgment filed by The Junction Center.[5] The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 12th day of March, 2012.

*/s/ Glen Conrad*
Chief United States District Judge

---

[4] For instance, Justus emphasizes that his wife had to transport him to work after another employee, who lived in a nearby area, resigned from The Junction Center; that other employees read documents to him instead of transcribing them into Braille; that he was not invited to accompany some of the other employees who got to pick out offices during an office move; that there was a hole in the wall of his office; that certain of his job duties changed over time; and that his rate of pay was reduced by approximately two dollars per hour.

[5] Having concluded that The Junction Center is entitled to summary judgment on the merits of the discrimination claim, the court need not consider its alternative argument that the claim is barred by the applicable statute of limitations.